Good morning, I'm Dennis Cunningham. This is Gordon Kaupp. He wrote a brief in this case, but it's been bottled up with some brand-new work, and so I'm going to argue the case. Mr. Cousins is also present in court, and we feel that we have been ill-served by the District Court's decision to throw us out of court, where we never got a chance to develop any kind of factual record, and where the Court seems to have felt that or misconstrued the complaint. Counsel, I have trouble with your argument regarding the immunities for purposes of the federal constitutional claims. However, I'm impressed with your argument under the Bain Act, the state statute. Under the Bain Act, I'm trying to figure out what your theory is. It looked as though the theory was that the state should have developed a system for letting people out once there's a change in the law that would entitle them to be let out. The theory that interested me more, frankly, it seemed more plausible, was once this fellow filed a petition for writ of habeas corpus, that that should have tipped the Attorney General off to look at the law instead of opposing it and decide, my gosh, he's right, we better let him out. I did not see that last theory laid out in your complaint. Is it? That the notice to the Attorney General that he deserved to be released would have come from his habeas petition? Yes. I think that's certainly true, Judge. I think it's just, it's belated at that point because, as you can see, the Attorney General didn't get around to making his informal response to the habeas petition for 14 months after it was filed. How long was it between when Cousins served his habeas petition and the Attorney General's office confessed error and let him out? I think it was another three or four months. An informal response apparently was invited. I think that's the process that they use. And in that, the Attorney General said, no, he should be kept in. The sentence is still good against him, even though the statute was overturned in the other case. Then the court issued an order to show cause, and at that point, the State agreed that the writ should lie, and he was released. That was 18 months total. I want to follow up, if I may, on Judge Kleinfeld's issue on the Bain Act. What I'm troubled about with your Bain Act claim is this. Under the Act, as you know, you have to show that there were threats, intimidation, or coercion. What were those specific acts? I think the coercion is merely the, you know, it's a reverse thing, Judge, and I appreciate the difficulty or conceptual problem on the surface of the language. The coercion was keeping him in jail. Are there any cases in California or otherwise you're aware of that have found threats, intimidation, or coercion to exist in a situation anywhere close to this? No. I didn't think so. We didn't find any. So under the circumstances, since it, and I'm kind of interested also, do you know of any cases moving over the 1983 portion of it and putting aside for a moment the immunity, are there any cases that you're aware of under federal or California law that indicate that there is a duty on the part of the State or its officials to respond in the way that you have alleged in this complaint? I think the whole structure of these cases says that. There's nothing directly on point in the sense that where it's, it has to come from them rather than from the prison. You're asking us to make new law. I don't think so, Judge, because I think that the Where's the one that, where's the case that already made the law? All these cases that are about the, I mean, the essential law is that he's entitled to his release, and it's a violation of his rights to hold him without authority. So then the question is, and the immunity question is the same thing. Were they responsible to understand that they had to do it in this instance, that they had to follow up, that there had to be action once the statute was stricken? And we think the strongest point is the fact that this scheme that's reflected in the regulations is checking on all this stuff. But the regulations are not a constitutional right. Are you suggesting? I understand that. I mean, Case v. Kitsap County Sheriff's Department, quoting Gardner v. Howard,  I don't think we're saying that because they, I mean, saying that they violated the regulations. They didn't do anything. So the point is there was a scheme. Just to be sure we understand each other, that your client was done a wrong, I don't think anybody could logically contest. The question here is you've got officials of the state, and you are saying that there is a duty, a legal duty that exists. Yes. To get this man out. Yes. To recognize that. And not only are you saying it's a duty, you're saying it is a constitutional duty. Yes. Specifically under the Eighth and the Fourteenth Amendment. So I think you agree there's no case law that says that you're right. There's, well, you know, I'm going to be drag kicking and screaming to that conclusion because I think that the import of these cases. What's the closest case? I think the Haygood and the Alexander case articulate the right in such a way and the responsibility of dealing with the circumstances. But that's the closest. Doesn't the Van de Kamp case that the Supreme Court recently decided pretty much shoot a few big holes in the constitutional aspect? Tell me what it said. The one where they framed the guy for murder, basically. And the Supreme Court said, well, they've still got immunity. This is a former DA of L.A. County. And I guess he was later Attorney General of California. Attorney General. I don't see that in the sense that I think that the Bureau or the Corrections Department got this whole bureaucracy that deals with this exact question. It's not specified. Counsel, I just don't follow it. It seems to me that maybe I misunderstand your argument. I just don't follow it if it's what I understand it to be. I think what you're saying is that there's a constitutional duty incumbent upon a state government to maintain a database so that whenever the state Supreme Court or the United States Supreme Court or other authoritative tribunal decides that some law is invalid for one reason or another, they run a sort, the way you might depict stocks with a price-earnings ratio, run a sort to find all prisoners who are imprisoned pursuant to that law in order to take the initiative in releasing them from their imprisonment. Is that a correct understanding of what the duty is? It's pretty close to that. I think it's pretty close to that because it seems to me absolutely logical that the Attorney General has the other case. He loses. Okay, we've got a statute stricken down. We know we've got some people convicted under this statute. We've got to act to get them released. That's just the constitutional need. But there's never been any case that said that, is there? I don't think so. I don't know that the case has arisen. I'm sure we would have found it. You're suggesting this is a novel factual situation? Yeah, but within the circumstance that's contemplated by the establishment of this bureaucracy to be sure of outdates and to make adjustments. I mean, all the language in those regulations plus the statute that tells the Attorney General what he's got to do says it's on you. It's on you. There are these other cases, Haygood and Alexander. The prisoner made the initiative. How would your constitutional argument go if the statute upon which your client was convicted was overturned at one level, but then they appeal? Would he still be entitled to get out then? He might be entitled to an order. I'm not sure about that, Judge, because I don't think it would be a final determination if an appeal was filed. Cousins doesn't assert that his right arose until the Supreme Court decision or the Appellate Court decision in North was filed. And the time to appeal had expired. And I think that's the way it would operate. If there was an appeal, then you have to wait and see how the appeal turned out. If there wasn't, then he's got to be released. The reality is that you're asking us to create a constitutional right out of whole cloth. Isn't that correct? I don't believe it's right to say that, Judge. Well, it's not. You conceded there's no case that says that there is. I wouldn't help your client necessarily, but wouldn't it be better for the legislature, federal or state, to have hearings determine the basis on which this would occur and what would need to be done? Why would that be necessary? It's cut and dried. He's entitled to his release. Every day there's guys, men and women, coming to work in both offices. The supervisor says, wow, we've got a case where we had a statute overturned. You better call the department, let them know this statute is no good. Anybody you're holding, you need to notify the courts. The reality is that there are, sadly, there are instances where people are wrongly convicted or held too long, and what frequently happens is that the legislature or the city council or whatever pass an ordinance, a bill, and they recompense. I mean, nobody can completely make up for that lost time, but they pay people who have been damaged for that because they feel it is a matter of justice. They should do that, and maybe you have a remedy there. But the problem at least that I'm struggling with is the fact that in order to be successful on this, you have to show that there is a constitutional right. There's fairly no right under our case law based upon the manual, on the administrative rules. That's already been decided. So you've got to show there's a constitutional right. The dimensions of that right, you agree, are amorphous. I mean, it, you know, you just create this thing and it just kind of grows of its own, and I'm puzzled as to how that would be delimited. How do you cabin the thing once you start? I mean, what are the factual circumstances for the amendment, the Eighth Amendment, for example, the Fourteenth Amendment? Where does it arise? Where does it end? Who can take advantage of it? I don't think you have to go beyond the circumstances of the case, Judge, in the context of the right not to be wrongfully imprisoned, not to be imprisoned without a basis. I'd rather sit down for a minute and see what counsel has to say about that. Please do. And get up for a last word. Thank you, counsel. May it please the Court, good morning, Your Honors. Will Fong, Deputy Attorney General for the State of California, appearing on behalf of the Defendant's Appellees. Help me on something distinct from the constitutional argument. I'm interested in State law claims. If I recall correctly, the 12B6 dismissal has to be based not only on the pleading, not stating a claim, but no claim could be stated upon which relief could be granted under the facts alleged. I can't remember the exact words. It seems to me that he's got a possible Bain Act claim and a possible false imprisonment claim under State law, and since he's got a federal handle, there's no jurisdictional problem. It troubled me that a man should spend a long time in prison when concededly the Attorney General conceded that he was entitled to be out of prison. So we did some independent research in chambers, and there's this California Supreme Court case, Sullivan v. County of Los Angeles, that says no immunity, the sheriff is liable under the California Tort Claims Act, where because of basically a superior court failing, the man who was supposed to be let out of jail was not let out of jail for a few days. Days in that case, not weeks or months, as in this one. I don't understand what's the matter with a State law claim. The federal immunities don't matter. The constitutional claims get the constitutional immunities, and after Goldstein, I don't know what a prosecutor can possibly have personal responsibility for. But the State law claims, those federal constitutional immunities just don't matter, and under this California case in Sullivan, they're not there. There aren't any. I agree, Your Honor. We did not assert an immunity argument to the State Bain Act claim. What we tried to present was that with respect to these individual defendants named in this lawsuit, Lockyer, former CDCR. He sued the Attorney General's office, didn't he? Not in this action. Procedurally, the State may have been a defendant, but when I got the file, the only defendants in the case were the individually named defendants. I'm looking at Lockyer on here. Correct. That's the AG. He sued in his individual capacity. Let me tell you why I asked that question. I was unimpressed with Plaintiff's argument that they should have figured it out after the State court said that the law that he was imprisoned under was unconstitutionally vague. I don't see the practicality of that. But once he filed a habeas petition, then, yeah, they should have figured it out. I mean, if you're a lawyer on the defense, you get the petition, and it turns out you're supposed to research it. And if the guy is right, you do something about it. You let him out in this case. And once they got his habeas petition, they didn't. They fought him until the California Supreme Court, I think it was, issued an order to show cause. What excuse do you have for fighting this and not letting him out? And they said, well, we don't have any actually. I would offer this, Your Honors. I understand it procedurally. When the habeas was filed, I believe it was the county district attorney's office that responded to that habeas, not the attorney general's office. And I'll be correct, I'll stand corrected if counsel corrects me. But my understanding was that was the situation. And when the file then got to the attorney general's office, it was reviewed. And it – there is some analysis that goes into the statute, the Penal Code statute that was overturned. And there was some thinking that although in the North case that Penal Code statute was found to be unconstitutionally vague in a certain respect, that that may not have applied to Mr. Cousin's case. So there was an analysis on that. They ultimately conceded that it did, right? But at some point, it was decided not to challenge. But, again, my understanding is that there was the issue of – Your Honor, that's right. He was charged with not reporting as a sex offender. He'd been sleeping in his car, parked in front of the Salvation Army. And then when somebody else got his spot, he parked his car down the street and got busted for not reporting the change of address from where his car was. There were some issues to the distance where he had informed the authorities that this is where his vehicle was. Is that what happened, the facts that I described? As I understand it, yes, Your Honor. And it was a question of whether it's more than 50 feet or 50 yards or something? Something, or maybe 100 feet, something like that. Maybe 100 feet? Yes. But that would have been across every reason. Now, I suppose he could amend his complaint. Rule 12 would not allow dismissal if it was amendable to charge the right person, whether it's the county D.A. or an assistant D.A. or the A.G. or an assistant A.G. or whoever decided to fight him on this. Well, let me respond to that, Your Honor. It's certainly true that he can amend, but our position would be that under the facts of this case, there would not be an ability to amend under any circumstances of facts, as we know them to apply to this case, that would allow them to state a valid Bain Act claim. Well, it looks like they don't have any immunity under state law. Correct. So what justification was there for fighting him on this? As I understand it, again, it was a question of the applicability of the particular subdivision section under Penal Code Section 290. I believe it was F1. That was found to be unconsciously vague. But, again, there was some analysis put into this matter, into the habeas petition, as to whether or not under Mr. North, Mr. Cousin's situation, there may have been an exception or that the unconstitutional aspect would apply. Even though in the case the Court had decided they said the law is unconstitutionally vague, was that a facial challenge, incidentally? I'm sorry, Your Honor? Was that a facial challenge where the California Court decided the statute was unconstitutionally vague? In the North matter? Yes. I believe it was. So it wouldn't really matter if his factual circumstances were different. Well, I'm at a little disadvantage to try to justify the analysis that went into the habeas petition because I wasn't part of that and I don't have all the details. It would be kind of amazing, actually, if after on a facial challenge the law was held unconstitutional. Nevertheless, the idea was this individual should have known that he had to report a change of address when he moved the car that he slept in because the spot was filled 100 feet down the road. Yes. I can offer this, Your Honor. My understanding is that there may have been other subdivisions of Penal Code section 290 that may have applied to Mr. Cousin's case, which would have been some basis for opposing the habeas. If there's some justification for fighting the habeas, it would really be nice to know it now before we decide the case. Well, ultimately, ultimately the decision was made that the habeas would not be opposed. Therefore, Mr. Cousin did secure his release. I'd like to follow up on a tangent on the Bain Act issue. The statute itself requires that there be threats, intimidation or coercion. I ask your opposing counsel the same question. With respect to these same defendants as pleaded, is there a requirement under the Bain Act that there be specific pleading as to any basis on which there was threats, intimidation or coercion? I would certainly answer that with a yes, Your Honor, in the sense that the cases we were able to locate that address the Bain Act, the Angelucci case and the Austin case cited in our papers, do go to some length to explain very clearly that under the Bain Act, you do have to allege specific facts of the requisite acts required under that statute, which are either discrimination, threats, intimidation or coercion. Why isn't it coercion to lock a steel door and not let a guy out? Certainly Mr. Cousin was incarcerated involuntarily. There's no question of that. Why isn't that coercion? Because the way he would like to go out and go to McDonald's, but the door is locked and he can't get out. Why doesn't that coerce him to make him stay in his room? The distinction I would make in this case, Your Honor, with respect to these three individual defendants is that at the time Mr. Cousin was in prison and the North ruling came in to invalidate Penal Code Section 290, subdivision F, I believe, Mr. Cousin was still incarcerated under legal process. So it was a court order or a judgment, a sentence from the court authorizing his confinement at Mule Creek State Prison or within the Department of Corrections and Rehabilitation, there's no act undertaken by former Attorney General Lockyer or former Director Rimmer or former Warden Campbell that coerced Mr. Cousin to stay in prison because at that time it was under legal process. This is not a case where these individuals knew that he should not have been in and either did something or failed to do something they should have to keep him in longer. That lends two different issues. One is whether there's coercion, and the other is whether they should have known better. It seems to me that on the whether they should have known better, you've got a very distinct argument from whether there's coercion. I still don't understand why it isn't coercive to lock a guy up. Well, I would offer the context of the cases that do specifically address the Bain Act, and the California Supreme Court in the Angelucci matter addressed that issue. And whether it's Angelucci or Alston that we're talking about, these are always cases where the defendant or the defendant in the civil case undertakes some action that either pressures or threatens with violence or intimidates the plaintiff. Well, usually, usually, usually people trying to coerce haven't been as successful as to have somebody locked in a cell. But once you have him locked in a cell, you don't have to threaten him anymore. You've got him. Well, if any of the named defendants had caused Mr. Cousins to be placed into the cell and have the door locked when they should not have done so, then arguably, that's coercion resulting in Mr. Cousins losing the exercise of his right to not be locked up. In this case, we have defendants who are heads of either agencies, departments, or prisons who have no knowledge of Mr. Cousins, who at the time of the North decision I think you're really strong on. I'm thinking if, oh, say when, what was it, Lawrence, consensual homosexual conduct is constitutionally protected, there are probably some people doing time in various jails around the country for that. And if they said, hey, let me out. The Supreme Court has just decided the Lawrence case. My guess is that the jailers would have said, well, you know, I don't really keep up on my slip sheets all that well. Why don't you file something and some of these lawyers who do keep up on the slip sheets can respond. I wouldn't have a problem with that part of your argument. I think you're right. But the part of the argument I have trouble with is once the lawyers do get it, once he files his petition, at that point I just don't understand why keeping him locked up in a cell isn't coercive. I think the question is, what's more, under that Sullivan case, I don't think he even needs a Bain Act claim. And remember, this is 12b-6. He's also got a false imprisonment claim under California law. The false imprisonment would appear to be independent of Bain. Did he plead a false imprisonment? I apologize. I'm not sure. I don't believe that he had pled false imprisonment. So we're not really dealing with false imprisonment here, are we? Yeah, I don't believe that's an issue that was pled. Can I refer you to the actual language of the Bain Act, California Civil Code, Section 52.1? It indicates that this gentleman can have an action against, in quotes, a person who interferes by threats, intimidation, or coercion with the exercise or enjoyment of another individual's constitutional or other legal rights. Now, other legal rights in this case, I think the government has stipulated that at a certain point he was entitled to get out of jail. Is that a legal right that he was entitled to get out of jail? Arguably, he certainly had a legal right to be released at the moment in time that the North decision was made. Okay. If that's correct, why isn't Judge Kleinfeld's analysis about the coercion correct for purposes of the Bain Act? My response would be, Your Honor, that if you analyze it in that fashion, that would result in sort of an instantaneous right that the incarcerated prisoner has, that once the decision is handed down from the court of appeals, I therefore have this right. The door to myself should be unlocked, and I should now be able to leave. Let's just say that you allow a brief administrative period, a day or two, whatever, something like that. But in this case, you're talking about I think three months, and there was some active fighting against that. Why does that not qualify if you treat that as coercion, keeping him behind bars as a violation of the Bain Act? Just to be clear, I believe if we're talking about this issue, we're only talking about it as it may apply to one of the defendants, a former Attorney General Lockyer, because as it stands, the CDCR director and the prison warden would have no role in directly opposing the writ petition in a procedure. So you're saying that only one person was even in the line of authority there, right? It seems so to me, Your Honor, and I would submit that if you're allowing some time for the Attorney General to become aware of the situation, to look at the legal issues, to analyze it to determine applicability, and you're not requiring the instantaneous unlocking of the prison door, then it begs the question how much time is permitted under what circumstances does the Attorney General have the ability to handle this? Why would not the correct thing to do in this part of the case be to certify the question of the California Supreme Court? This is a matter of State law. I mean, we can construe it, but it is a matter of State law. It seems not to have been construed in a context similar to this. Why would that not be the appropriate thing to do? Well, I'm not prepared to say that that's not the appropriate thing to do, Your Honor. My response would be that in the context of this specific litigation, we're not talking about a general right of Mr. Cousins to file a Bain Act claim against some State employee. We're talking about his ability to pursue that claim against these specific named individual defendants. And, again, as I tried to articulate in the plea, in the written papers, there are no set of facts, I believe, that would allow that claim to go forward against the former Attorney General, the CDCR director in the prison warden. How long was he held in prison subsequent to his petition for rudifabia scorpis? From the moment of filing until the moment of release, I believe it is alleged to be 17 months, but I don't know that figure. So he did 17 months of prison after filing a correct petition? Well, if you give me one moment, Your Honor, let me see if I have it specifically noted. One year and seven months after North was decided is when Mr. Cousins was released. So that would be 19 months? 19 months, yes. So he did 19 months of imprisonment after filing a petition that was correct? Correct. But critically, we're not talking about 19 months after a court had ordered his release  I'm talking about the petition. As alleged, yes. And during that 19 months, I gather for a while the Attorney General's office was handling the case and for a while the county attorney's office was handling the case. Do you know which individuals when and who did what? Is it clear? I don't know the answer to that, Your Honor, and even at this point it's not clear to me whether or not the habeas petition was handled entirely by the district attorney's office, such that when the order to show cause was issued, they did not appear and therefore the Where we are is he did 17 months of prison that he shouldn't have done after he told the State, you have to be letting me out under this North case, and we don't know who's responsible. I can't disagree with anything that you said, Your Honor, but I would offer that there is a distinction between the right that you get once there's a legal change in the law and the process that may be required following that for you to ultimately reap the rewards or the benefits of that. Frankly, what I'm thinking about is actually bad faith litigation and insurance claims. I don't know if you have familiarity with bad faith litigation. In concept. The idea is the insurance company doesn't have any right to go out and check with its policyholders all the time. You happen to have any problems that we haven't taken proper care of. But once the policyholder turns something over to the insurance company, like some medicals that it's supposed to pay or a liability claim it's supposed to defend, if it just messes around and doesn't do anything, then it's subject to damages which are not controlled by its policy limit, plus punitive damages for bad faith. And it strikes me as sort of an analogy here that even though I'm skeptical of the plaintiff's claim that the whole state apparatus has to be looking out, looking at the slip sheets and checking to see whether they have any prisoners entitled to relief, it looks more like an insurance bad faith situation once he's told them he's filed a petition for a writ of habeas corpus. I can't concede that point with respect to former Attorney General Locke, Your Honor. I would like to take one step back, though, and say that I guess we would have to know the whole internal system of the Attorney General's office to know if Locke was personally responsible or not and to know who did what when and who has what responsibilities. For all we know, some assistant AG sent a report upstairs saying we ought to let this guy out. And his boss said, I don't think we dare do that without Locke's approval. And then Locke said, I'm not letting anyone out until the court says to. I mean, that's just speculation. I'm making it up. We have no idea what happened. Is that right or do we? What I understand to be the case is that there was never any information conveyed to Attorney General Locke that we have one or more individuals, let alone Mr. Cousin. And that's not in the record because we were dealing with the allegations in the First Amendment complaint. So for all we know from the record on the 12b-6, it was Locke's personal decision. Well, if we assume that to be the case, Your Honor, the one step I wanted to take backwards was that when we talked about immunity application, certainly the State prosecutorial immunity cited in our papers would apply to Attorney General Locke. Well, that's only Federal. That doesn't apply to the Bain Act, though. No, that would apply to the State. This is a State law prosecutorial immunity that's separate and distinct from the Federal immunity. I don't know if there were any immunities under State law on account of the Sullivan case. What statute are you referring to, counsel? Give me one second, Your Honor. This would be argument three in our appellee's brief beginning on page 15. I'm sorry. This is beginning on page 17, the State claim prosecutorial immunity under California Government Code Section 824. 821.6. 821. 821.6, which is a specific prosecutorial immunity for State law claims, which would apply to the Bain Act. You're saying that notwithstanding the fact that there is no, in effect, 1983 prosecutorial immunity, there is separate California State law immunity so that even if a cause of action were pleaded under the Bain Act, there would still be no liability? Correct. If the targeted defendant is part of the Attorney General's criminal division handling the criminal appeals, then this 821.6 section would apply. I don't understand how you make an argument out of that. For one thing, you've got Sullivan that seems to say no immunities. For another thing, the words of 821.6 don't seem to fit, unless I've missed something. It says a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause. My problem there is that this wrongfully imprisoned fellow, what's his name again? Cousins. Yes. He's not saying the DA shouldn't have prosecuted me. He's not saying the DA shouldn't have instituted a prosecution against me. He's not going on instituting or prosecuting. His claim is they shouldn't have defended against my prosecution of a claim. And 821.6 just creates this shield for instituting or prosecuting. It doesn't create a shield for doing anything at all. Your Honor, I would direct the Court's attention to the Ingram v. Flippo case cited in our papers on page 17, which offers some guidance on the scope of the immunity. And that case does stand for the proposition that the immunity under 821.6 is to be given an expansive interpretation. And it does apply to both pre- and post-conviction conduct by the State prosecutor. In other words, if you ---- What's the name of the case? Ingram? Ingram, I-N-G-R-A-M, v. Flippo, F-L-I-P-P-O. I see your cite. Yes. I don't happen to have the case handy, and I haven't read it. I see it's a Cal-Act case. Yes. Pre- and post-conviction conduct. I don't know what it is. I don't know if it's ---- what kind of conduct was there? I apologize, Your Honor. I can't be the specific facts of the case that escape me at the moment. The point I was trying to make with the citation of that case is that this does cover both the prosecutorial instituting. Well, I don't know what it covers, because I don't know the facts and don't know exactly what it said. So I'd appreciate your help. But what were the facts of the case? I'm sorry, Your Honor. I can't recall the facts of the Ingram case. I apologize for that. Thank you, counsel. Thank you, Your Honor. Counsel? I can't tell you what Ingram v. Slicko says either, Your Honor. We've got it in a file here, and I looked at it quickly, but I don't remember the precise facts. But I do believe that the immunity in 821.6 is limited to ---- it would, in this case, have been limited to the North case. It's not limited to a collateral case where the duty that we're trying to impose here is ministerial. So it's the communication. Also, what you're saying is that under Ingram v. Slicko, if it had still been State of California v. Cousins, everything would be immune. But this isn't State of California v. Cousins. This is a different case. In terms of that immunity that would apply to the initiation of a prosecution, the Attorney General is not involved in the prosecution of Cousins. He's only involved in learning that the statute Cousins is held on is invalid, and he's entitled to release. But isn't that statute intended to be the State equivalent of the qualified and or complete immunity that the Federal Government has? And I don't think that applies here either. I don't think it's qualified immunity. We understand that the Federal absolute and qualified immunity doesn't apply. I'm saying isn't 821.6 intended to be the State equivalent of that? Of Imler, of prosecutorial immunity, yes, but not of qualified immunity. Okay. So you're saying it's only absolute immunity then. Right. And let's don't forget here, we're not ---- we sued these three people because we knew who they were. We didn't expect them to be the ultimate defendants. We expected to have discovery. And this goes to the whole issue here of whether there should be qualified immunity in the failure to take steps to release him or to find out that he was entitled to release because we never got any discovery. So we don't know how that system works.  that a statute was overturned. I don't think it happens that often, Judge. You don't have to read the advance sheets every day. It might ---- it's a sex offender case. It probably was in the newspaper that the statute was invalidated. I mean, there's a million ways that notice can come, and they have this whole elaborate system of keeping track of it, and they do read the advance sheets. If you read the regulations as not applying to any specific situation, applying only to the authority to continue to hold a prisoner and when it expires, and keeping track of that and making sure that any other activity in the law that applies is brought to bear. So, you know, without any discovery, we never got to find out anything about how that works in the Department or in the Attorney General's office, and we were cut off at the knees. We never found out who the responsible party was. That, of course, is one of the reasons for we deal with the Pearson case now a lot. Yes. Because we're ---- they don't want these government officials to have to undergo discovery because of all of the costs, et cetera, et cetera, et cetera, unless a prime official case is stated. So ---- Well, Judge, not to cut you off, but the cases are careful to say how difficult it is to grant qualified immunity at the pleading stage because you have no facts in the record to ---- I guess there's immunity from trial and immunity from liability. The Federal immunity is immunity from trial. Yes. It's sometimes immunity from discovery, but only in a proper case. Is State's 21.6 immunity from damages or is it immunity from litigation and trial? It strikes me by its language that it's immunity from the cause of action. If he's talking about initiating the prosecution, but it's the prosecution and it's not the administration. Judge, I want to point out that in the complaint we did have a false arrest claim. We also had a ---- So I guess that would be damages, wouldn't it? Yes. So you're saying you did have a false arrest? There is a false arrest claim in count four on ER 20 in the amended complaint. We also originally had a complaint against the entity. I'm not sure exactly what happened to it because under 815.6 ---- What page of the first amended complaint is your ---- I'm sorry? I'm looking here now at the first amended complaint. What ---- On the page of the complaint is page 7, ER 20 down in the lower right. So you've got a false arrest and false imprisonment. Yes, we do. Yes, we do. I mean, that doesn't make me want to give up. I'm very encouraged by what Your Honor say about the State claims, but it doesn't make me want to give up the qualified immunity argument because it seems to me they have notice based on the structure that they have and the operations that they carry out normally. They have an obligation on the attorney general under section 12512 of the government code that he shall direct the issuing of such processes may be necessary to carry a judgment into execution. I don't know why that wouldn't apply to a collateral matter as well as a direct matter. We're way over time. I understand, Judge, but you did go over. ER 20, that's very important. Thank you. You know, it's most important to us that we come out here with some kind of case. But I urge Your Honors to look carefully at the qualified immunity question at this stage with this much evidence on the face or this much pleading to the effect that they did have a form of operations which would have given them notice of their obligation in such a case. They did have in the attorney general's office the need to. You know, there's still a puzzle I have about this. You keep arguing your hard case instead of your easy case. You keep arguing your hard case about some big system. And I frankly focus more on the easy case for cousins. The guy was in prison for 19 months when he shouldn't have been. And I'm afraid there's something I'm missing in what I think is the easy case is not so easy and you need the hard case. How come you're not focusing on just cousins doing 19 months after he petitioned? Well, that's the only thing we'll hear about. I mean, maybe just because of the problem of the interpretation of coercion in the Bain Act. You know, okay, now we've got the false arrest case, but this is not about an arrest. Am I missing something here? I think what you're missing, Judge, is the notion that there was a clearly established right here and that in the cases such as Hagel and Alexander where there was, the prisoner was bugging the authorities to get out, it activates the same process, the same obligation. Find out the circumstance as to whether there's still a legal basis to hold the prisoner. Did the trial court sustain a 12b-6 motion against the false imprisonment claim? I don't think she touched it. Didn't even touch it? No, I don't think so. So what happened to it? I mean, is that just lying there in co-op or something or? The case was dismissed. Yeah. By implication, she didn't want it. Yeah, she said you can't, there's no remedy for this thing, for the 19 marks. Pardon me? She dismissed it. Yeah, there's a judgment of dismissal. Is there any problem that you're aware of? If we were to reverse and send it back for the false imprisonment, just arguendo, would you have any problem going forward with that? Are there any problems in fleeting or otherwise you're aware of that would create issues for you? I can't think of anything offhand, Judge. I'm used to litigating in the Federal court and dealing with Federal civil rights, and I think that's what's at stake here. But I think that the ancillary rights under State law are robust. The constitutional thing, you know, I can see it in California. They've got such a gigantic bureaucracy anyway that having another 15 or 20 lawyers going through a database, maybe they can afford that. I don't know. But Alaska, they probably have one lawyer in Alaska who has some responsibility to these things. How do they have so many lawyers doing it, Judge? How many? You said you talked about searching a database, okay, convictions under 290. It's been thrown out. How many people do we have that we're holding under that? Who are they? I'm thinking if we created your constitutional right, Alaska would have to first create a database. It would have to hire people to create a database, maybe a year and a half to figure out how to do it. Then it would have to hire some lawyers to figure out how to do the coding and read the slip sheets and figure out what commands to send to the database. No way, Judge. They would say the Attorney General, when a statute is ruled unconstitutional, you know there are some people who have been convicted under it. Just find out who they are and let them out. It doesn't take that much. And certainly in Alaska, they don't have hundreds of thousands. How do I find out who they are? How do I even know if there's a case unless I keep up on a slip sheet? What if you put out a notice to everybody in the prisons and say, if you're under 290, get in touch with us because you're entitled to get out. What's so hard about that? Got it, I guess. Thanks. All right. Thank you very much. Thank you, Counsel. Cousins v. Lockyer is submitted.
judges: Tg Nelson, Kleinfeld, M. Smith, Cjj